**In the District Court of the United States**
**For The District of South Carolina**
BEAUFORT DIVISION

RECEIVED
USDC CLERK, CHARLESTON, SC

2006 MAY -3 A 10: 51

| | |
|---|---|
| **Robert B. Smalls, # 208766,** ) | |
| ) Civil Action No. 9:05-2995-GRA-GCK | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| **Ronaldo Myers,** ) | **REPORT AND RECOMMENDATION** |
| ) | **OF THE MAGISTRATE JUDGE** |
| Defendant. ) | |

## I.  INTRODUCTION

The Plaintiff, Robert B. Smalls ("Plaintiff" or "Smalls"), was a pre-trial detainee in the Alvin S. Glenn Detention Center (the "ASGDC") in Richland County during the time of the alleged events giving rise to this action.[1] Proceeding *pro se*, Plaintiff seeks relief under Title 42, United States Code § 1983 from the defendant, Ronaldo Myers ("Defendant" or "Myers"), the Director of the ASGDC, due to the allegedly unsanitary and overcrowded conditions at the ASGDC. Plaintiff claims he has suffered "cruel and unusual punishment and physical, mental and emotional abuse [and] pain and suffering" and seeks $500,000.00 in damages.

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983[2] and in cases filed by *pro se* litigants, and submit findings and



---

[1] Plaintiff is now housed at the Walden Correctional Institution in Columbia.

[2] 42 U.S.C. §1983 provides, in pertinent part:  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory

recommendations to the District Court. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the court.

## II. *PRO SE* COMPLAINT

Plaintiff has brought this action *pro se*, which requires that his pleadings be accorded liberal construction. *Haines v. Kerner*, 404 U.S. 519 (1972); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F. 2d 1147 (4th Cir. ) *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* Complaint herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214 (the "AEDPA"). This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).



*Pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* complaint is still subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d

---

decree was violated or declaratory relief was unavailable.

1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III. FACTUAL BACKGROUND

Plaintiff was housed in the ASGDC from April 15, 2005 to December 12, 2005.[3] In support of his allegations of cruel and unusual punishment due to overcrowding in the faculty, Plaintiff contends he was forced to sleep on a "stacker bunk" on the floor and alleges the carpet was mildewed and dirty. He also claims that the food was nutritionally inadequate and he suffered hunger, which caused him to spend money on food items from the canteen. Plaintiff alleges that the inadequate food caused tension and fights among the inmates and that he feared for his safety. Furthermore, Plaintiff alleges the bathrooms were unsanitary, that there were not enough toilets, and that the toilets did not always work. Plaintiff also complains that he was forced to shave, wash, and eat with HIV positive inmates; that the ASGDC medical staff failed to respond to the six (6) requests for medical help he submitted, and that Plaintiff suffered chest pains in August 2005 but his request for an EKG was refused. Plaintiff also claims that the grievances he filed were ignored, and that the ASGDC's disciplinary system was inadequate.[4]



### IV. PROCEDURAL HISTORY IN FEDERAL COURT

On October 19, 2005 Plaintiff filed this action against the Defendant, as the Director of the ASGDC.[5] [1-1] The Defendant filed an Answer on November 29, 2005, asserting a

---

[3] *See* Plaintiff's Affidavit, attached to [23-1].

[4] *See* Complaint, generally. [1-1]

[5] Plaintiff has the benefit of the holding of *Houston v. Lack*, 487 U.S. 266 (1988) with respect to the "delivery" date of his initial filing with the court. *See* Order [4-1] filed on October 25, 2005 at p. 1, n.1.

general denial of Plaintiff's claims; and, among other defenses, alleging that the Plaintiff had failed to state a cause of action against the Defendant; that the Defendant was entitled to the defense of soverign immunity; and that Plaintiff had failed to exhaust the available administrative remedies. [9-1] On December 14, 2005, Plaintiff filed a reply to the Answer, alleging in pertinent part that he had, in fact, exhausted the remedies available to him. [10-1]

On January 30, 2006, the Defendant filed a Motion for Summary Judgment with a supporting Memorandum and Affidavits. [16-1; 16-2; 16-3] On January 31, 2006, the undersigned issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the importance of a motion for summary judgment and of the necessity for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendant's motion may be granted, thereby ending his case.[6] [18-1]

On March 9, 2006, after the Plaintiff failed to heed the court's *Roseboro* Order and had failed to respond to the Defendant's Motion for Summary Judgment, the court issued a second Order which allowed the Plaintiff an additional twenty (20) days to respond to the Defendant's Motion. [21-1]



After Plaintiff failed to respond to the court's second Order, the undersigned issued a Report and Recommendation on April 3, 2006 which recommended that the action be dismissed pursuant to Rule 41(b), Fed. R.Civ.P., as the court was led to believe, by Plaintiff's inaction, that he did not wish to pursue his case. [22-1] On April 4, 2006, Plaintiff filed a Motion to Compel, requesting the production of certain documents from the Defendant. [23-1] Also on that date, Plaintiff filed a response to the Defendant's Motion for Summary Judgment. [24-1] Accordingly, this matter is ripe for review.

---

[6] The explanation to the *pro se* litigant is required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

## V. THE STANDARD FOR DECIDING A MOTION FOR SUMMARY JUDGMENT

The Defendant's Motion for Summary Judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

As to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then designate specific facts showing that there is a genuine issue for trial. *Celotex*. Thus, in opposition to the motion for summary judgment, Plaintiff has the burden of pointing to substantial evidence showing triable issues of facts relating to the essential elements of the claim. Not every factual issue will defeat a motion for summary judgment. It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. *Felty v. Graves-Humphreys Company*, 818 F. 2d 1126 (4th Cir. 1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. *Stone v. University of Maryland Medical System Corp.*, 855 F. 2d 167 (4th Cir. 1988).



## VI. DISCUSSION

### A. Whether Plaintiff has Exhausted his Administrative Remedies

As a threshold matter, the court must address whether Plaintiff has exhausted his administrative remedies prior to filing suit. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires an inmate to exhaust "such administrative remedies as are available" before suing over prison conditions. Specifically, 42 U.S.C. § 1997e(a) states, "no action shall be brought with respect to prison conditions under section 1983 of this title, or

any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." There is no question but that the PLRA's exhaustion requirement is mandatory. *See Anderson v. XYZ Corr. Health Serv.*, 407 F.3d 674, 676-77 (4th Cir. 2005), *citing Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy and effective.' The effectiveness of the administrative procedure to produce the inmate's requested remedy and/or the alleged futility of the administrative remedies to produce the inmate's requested remedy are not exceptions to the exhaustion of administrative remedies requirement under the Act.") (internal quotation and citation omitted). Exhaustion must occur prior to the filing of the lawsuit or it must be dismissed. *Anderson v. XYZ*, 407 F.3d at 683.

According to the evidence before the court, Plaintiff filed three grievances during the time he was housed at the ASGDC. Plaintiff's first grievance stated that a female Detention Officer employee used "tactics" in his unit that appeared to provoke the inmates instead of gain their cooperation, and Plaintiff believed he and the inmates were "at risk for an incident to happen." Plaintiff asked that the Detention Officer be kept out of his unit "until she can deal with the situation in an intelligent manner."[7] Plaintiff received a response to this grievance on June 16, 2005.[8]

Plaintiff's second grievance addressed his desire for additional time in the legal library to research his criminal case. Plaintiff received a response to this grievance on August 24,

---

[7] *See* Exhibit A, Bates # 6993-A-018, attached to Plaintiff's [23-1]

[8] *Id.*

2005 which noted that he was routinely allowed to utilize the library on at least five occasions, as scheduled.[9]

Finally, Plaintiff filed a grievance form complaining that "the Doctor put me on 81 milligrams aspirin for chest pains. About a month and a half ago. I'm still experiencing chest pain and they won't answer my requests for medical help."[10] Plaintiff asked for an EKG and was advised that his treatment plan did not call for an EKG but that he could sign up for sick call if he experienced additional problems.[11]

Significantly, each of the three grievance forms clearly indicate at the bottom of each of the forms that if the inmate is not satisfied with the response, an inmate may appeal to the Assistant Director or his designee. In this case, Plaintiff has failed to appeal these grievances.[12] Therefore, he has not fully exhausted his administrative remedies. For no other reason than Plaintiff's failure to exhaust administrative remedies, this action could be dismissed without prejudice. However, as discussed below, Plaintiff also has failed to set forth any genuine issues of material fact, this action is frivolous, and the Defendant is entitled to summary judgment.

## B. Additional Grounds for Summary Judgment

The undersigned Magistrate Judge recommends that Defendant's Motion for Summary Judgment be granted as to Plaintiff's claims on the merits and that this case be dismissed with prejudice.

---

[9]    See Exhibit A, Bates # 6993-A-017, attached to Plaintiff's [23-1].

[10]   See Exhibit A, Bates # 6993-A-0104, attached to Plaintiff's [23-1].

[11]   Id.

[12]   See Affidavit of Ronoldo Myers [16-3] at ¶¶ 7-10.

## C. Applicable Law

Plaintiff was a pre-trial detainee at the time of the incidents at issue, and thus the analysis of his allegations are governed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, rather than under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Hill v. Nicodemus*, 979 F.2d 987, 990 (4th Cir. 1992); *Cooper v. Dyke*, 814 F.2d 941 (4th Cir. 1987); *Nelson v. Collins*, 659 F.2d 420, 425 (4th Cir. 1981) (*en banc* ); *Loe v. Armistead*, 582 F.2d 1291, 1293-94 (4th Cir. 1978), *cert. denied*, 446 U.S. 928 (1980). The due process rights of detainees are at least coextensive with the Eighth Amendment rights of convicted prisoners, and perhaps greater. *See Cooper*, 814 F.2d at 848-49; *Whisenant v. Yuam*, 739 F.2d 160 (4th Cir. 1984). Because the constitutional rights of a pre-trial detainee flow from the Due Process Clause of the Fourteenth Amendment, they are distinguishable from an inmate's right not to be subjected to cruel and unusual punishment under the Eighth Amendment. *Bell*, 441 U.S. at 535 n. 16 . In *Bell*, the United States Supreme Court established that pre-trial detainees have a right, protected by due process, to be free from conditions of confinement that constitute "punishment." The constitution requires that a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535. Thus, when evaluating the constitutionality of the conditions or restrictions of pretrial detention, the court must determine whether the conditions allegedly encountered by the detainee amounted to punishment. *Id.* at 536-37. *Bell* made clear that a district court must, when presented with pre-trial detainee claims such as these, determine whether the conditions in question constitute "punishment" or are permissible regulatory restraints that are necessary incidents of pre-trial detention. *Id.* at 537-38. Thus, the test for determining whether the Plaintiff's conditions of confinement are unconstitutional rest upon whether the condition amounts to punishment.



The limited length of a detainee's stay in a facility may be considered in determining the constitutionality of conditions or restrictions. *Bell*, 441 U.S. at 535. Absent a showing of expressed intent to punish on the part of correctional officials, the determination of whether a particular condition or restriction is punishment generally turns on whether it is rationally connected to legitimate nonpunitive purpose and whether it is excessive in relation to that purpose. *See, e.g., Bell*, 441 U.S. at 538 (restrictions or conditions that are arbitrary or purposeless may be considered punishment); *see also Belcher v. Oliver*, 898 F.2d 32 (4th Cir. 1990) (protection from suicide).

### 1. Plaintiff has Failed to State a Claim

To state a Section 1983 claim, a plaintiff must allege that he suffered specific injury as a result of the specific conduct of a defendant, and show an affirmative link between the injury and that conduct. *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). Plaintiff has not specifically connected any of his claims to the Defendant. Furthermore, the Defendant cannot be liable simply based upon his position as Director of the ASGDC because *respondeat superior* liability has no place in Section 1983 jurisprudence. Thus, the Defendant's position as the supervisor of a person who allegedly violated Plaintiff's constitutional rights will not impose liability upon him. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977).



### 2. Section 1997e(e)

Next, it must be noted that Plaintiff's claims for compensatory damages suffer from a fundamental problem. As discussed above, Plaintiff's complaint is subject to the PLRA, which provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003). Section 1997e(e)'s physical injury requirement applies to all federal actions brought by prisoners, even to the extent that the requirement may bar an

otherwise cognizable claim of constitutional magnitude. *Harris v. Garner*, 190 F.3d 1279, 1287-88 (11th Cir. 1999), *vacated in part and reinstated in pertinent part on reh'g*, 216 F.3d 970, 984-85 (11th Cir. 2000) *(en banc)*.

Although Section 1997e(e) operates as a pleading requirement regarding what a prisoner must allege in order to bring suit (*see Harris*, 190 F.3d at 1286), it also imposes an evidentiary standard on prisoner claims for compensatory damages. *See, e.g., Jarriett v. Wilson*, 414 F.3d 634, 641 (6th Cir. 2005); *Royal v. Kautzky*, 375 F.3d 720, 722 (8th Cir. 2004); *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir. 2003); *Searles v. Van Bebber*, 251 F.3d 869, 877 (10th Cir. 2001). In order for a claim to survive Section 1997e(e), a prisoner must present evidence to support a finding that he has suffered an actual physical injury that is more than *de minimis*. *Harris v. Garner*, 190 F.3d at 1287.

Accordingly, it is clear that Plaintiff's claims for compensatory damages cannot surmount the Section 1997e(e) bar. Furthermore, Plaintiff's claims for alleged emotional distress must be dismissed as a matter of law where the record demonstrates that Plaintiff has suffered no physical injury. Plaintiff is required to show that he has sustained a demonstrable physical injury prior to being able to assert any claim for emotional injury or damages under Section 1997(e)(e). In the present case, Plaintiff has failed to show that he has sustained any physical injury. Therefore, Plaintiff's claims for emotional or mental stress or trauma should be dismissed as a matter of law pursuant to 42 U.S.C. § 1997.



### 3. Sleeping Arrangements

Although Plaintiff very well may have been dismayed by the sleeping arrangements and overcrowding at ASGDC, Plaintiff has presented no proof that he has actually suffered any physical injury (as opposed to discomfort). Being forced to sleep on the floor or on an uncomfortable mattress, in and of itself, does not rise to a level of a constitutional violation. *See, e.g., Calhoun v. Thomas*, 360 F.Supp.2d 1264 (M.D.Ala. 2005). It is important to remember that Plaintiff was housed in a county detention center, not a hotel, and it should be

expected that conditions in such a setting ore oftentimes less than ideal. *See*, e.g., *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994); *Hadley v. Peters*, No. 94-1207, 1995 WL 675990 *8 (7th Cir. 1995), *cert. denied*, 116 S.Ct. 1333 (1996) ("prisons are not required to provide and prisoners cannot expect the services of a good hotel.") (*quoting Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988)). Finally, the Defendant states by Affidavit that he was not aware of any complaint or grievance by Plaintiff regarding his bedding or sleeping arrangements.[13]

Furthermore, although Plaintiff complains of the "terrible odor coming out of the bathroom and the carpet,"[14] the Defendant states that the ASGDC inmates are provided with various cleaning supplies and implements, and "[s]ome inmates are required to periodically perform various cleaning functions within the facility, including cleaning the bathrooms and vacuuming the carpets."[15] Plaintiff's claims regarding the allegedly uncleanliness of the ASGDC simply are not of constitutional magnitude. For example, as a general matter, short periods of incarceration in unsanitary conditions far worse than those alleged by Plaintiff are generally insufficient to evidence an Eighth Amendment violation. *See, e.g., Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (depriving prisoner of toilet paper, soap, toothpaste and toothbrush while keeping him in filthy, roach-infested cell for a period of several days was not a constitutional violation).



### 4. Food Service

Plaintiff next alleges that the food served at ASGDC was nutritionally inadequate and he suffered hunger, causing him to spend money on food items from the canteen. It is well-settled that prison officials should supply "nutritionally adequate food that is prepared and

---

[13]  *See* Defendant's Affidavit [16-3] at ¶ 25.

[14]  *See* Complaint at p. 3.

[15]  *See* Defendant's Affidavit [16-3] at ¶ 23.

served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981); *see also Jones v. Diamond*, 636 F.2d 1364, 1378 (5th Cir. 1981) (food must be reasonably nutritious), *overruled in part on other grounds*, *Int'l Woodworkers of America, AFL-CIO v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986) *(en banc)*; *Cunningham v. Jones*, 567 F.2d 653, 657-60 (6th Cir. 1977) (same); *Finney v. Arkansas*, 505 F.2d 194 (8th Cir. 1974). Furthermore, in order for a plaintiff to state an Eighth Amendment claim, the plaintiff is required to show that the defendant prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825 (1994). Plaintiff has made no such showing in this case, and thus is claim is without merit.

### 5. Alleged Medical Needs

With respect to Plaintiff's alleged medical needs, he must show deliberate indifference to a serious need. With respect to medical and health needs, Taylor must show deliberate indifference to a serious need. *Wilson v. Seiter*, 501 U.S. 294 (1991); *Estelle v. Gamble*, 429 U.S. 97 (1977). Cases under this heading cover diverse circumstances, ranging from suicide prevention to medical emergencies to provision of wheelchairs or crutches. Consistently, however, the test has been one of deliberate indifference. *Grayson v. Peed*, 195 F.3d 692 (4th Cir. 1999); *Shakka v. Smith*, 71 F.3d 162 (4th Cir. 1995); *Davis v. Hall*, 992 F.2d 151 (8th Cir. 1993); *Hill v. Nicodemus*, 979 F.2d 987 (4th Cir. 1992); *Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991); *Belcher v. Oliver*, 898 F.2d 32 (4th Cir. 1990).



In the present case, Plaintiff alleges that the Defendant was deliberately indifferent to his serious medical needs, which primarily appear to be chest pains. "A pretrial detainee makes out a due process violation if he shows deliberate indifference to serious medical needs within the meaning of *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976)." *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988). In *Whitley v. Albers*, 475 U.S. 312, 319 (1986), the United

States Supreme Court explained its holding in *Estelle* to mean that "negligen[ce] in diagnosing or treating a medical condition did not suffice to make out a claim of cruel and unusual punishment." Instead, "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cell block." *Id.*

The Plaintiff has failed in his burden to establish deliberate indifference on the part of the Defendant. He has not shown that his medical treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness[.]" *Miltier v. Beorn*, 896 F.2d at 851-52. It appears that the Plaintiff disagrees with the medical judgment concerning the course of treatment he received for his conditions. However, mere disagreement does not implicate constitutional protections. *See, e.g., Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam) (holding that "[q]uestions of medical judgment are not subject to judicial review" under Section 1983). Even if Plaintiff alleged that he was subjected to medical malpractice, mere malpractice by medical personnel is insufficient to state a claim under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1991) ("To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."). Thus, Plaintiff's claims regarding inadequate medical care are without merit.



### 6. Perceived Harm

In the present case, Plaintiff has put forth no direct evidence or evidence that could be inferred to lead this court to conclude that the alleged conditions at the ASGDC were meant to punish him. First, while the Complaint sets forth a number of potential injuries that he

potentially could have suffered, Plaintiff has not set forth any evidence that he actually suffered any harm while detained in the ASGDC. For example, Plaintiff has not shown that he has contracted the AIDS virus from the HIV inmates with whom he was housed.[16] Therefore. his claims must fail as a matter of law. *See Rowland v. Perry*, 41 F.3d 167 (4th Cir. 1994); *Belcher v. Oliver*, 898 F.2d 32 (4th Cir. 1990). Plaintiff has failed to establish that the potential harm of which he complains is inevitable, or even possible. Finally, there is no evidence to show that the Defendant was aware of the specific harm complained of by the Plaintiff or that he realized that the purported condition could cause harm. Without a showing of these essential elements, Plaintiff's Complaint fails to state a constitutional deprivation as a matter of law and the Defendant should be granted summary judgment.

### 7. The Defendant had no personal interaction with Plaintiff sufficient to state a constitutional claim

To the extent that Plaintiff is alleging claims against the Defendant in his individual capacity, Plaintiff's claim must fail, because Plaintiff cannot provide evidence of personal involvement in the alleged deprivation. An action may be brought against a state official in his individual capacity under Section 1983 if the official's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The right allegedly violated must be articulated in a "particularized" and "relevant" way. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In short, the court must be able to conclude, in light of pre-existing law, that the unlawfulness of the challenged action was apparent to the official. *Id.* In other words, in order for an individual to be liable under Section 1983, it must be "affirmatively shown that

---

[16] As the Defendant correctly argues, the segregation of HIV positive inmates has been specifically addressed by the district court in *Portee v. Tollison*, 753 F.Supp. 184 (D.S.C.1990), which ruled that the segregation of HIV positive inmates was not required where HIV is not spread through casual contact and the behavior that does spread the virus is prohibited within the prison setting.

the official charged acted personally in the deprivation of the plaintiff's rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Only if the Defendant had personal knowledge of and involvement in the alleged deprivation of the Plaintiff's rights could he be held liable. Finally, in the context of pretrial detainees, Plaintiff also must show that the named Defendant displayed a deliberate or callous indifference to a specific known risk of harm to him. *See Pressly v. Hutto*, 816 F.2d 977 (4th Cir. 1987).

Plaintiff is unable to meet this burden. In the present case, the Defendant has stated by Affidavit that as Director of the ASGDC, he "do[es] not normally have any personal interaction with the inmate population" and he "do[es] not recall ever having any personal interaction with Plaintiff during the time of incarceration at issue.[17]

In the present case, the record demonstrates that the ASGDC is routinely inspected and that the facility passes these inspections. It would be wholly unreasonable to suggest that the Defendant should be held to account for some constitutional deprivation where the facilities operation is within the bounds of State law. Plaintiff was provided with adequate cleaning implements and materials to allow him to correct any condition he found unsanitary or intolerable. Furthermore, the Defendant has testified that he believes that there was no threat to Plaintiff's health or welfare, despite his acknowledgment that the facility is currently exceeding its designed capacity goal.[18] Finally, there is no evidence to show the Defendant's personal involvement in any alleged deprivation. Thus, it is recommended that the Defendant be entitled to immunity and dismissed from this suit.



## Conclusion

Even if the court were to determine that Plaintiff had exhausted his remedies, the Defendant nonetheless is entitled to summary judgment on Plaintiff's claims.

---

[17] *See* Defendant's Affidavit [16-3] at ¶¶ 2-3.

[18] *See* Defendant's Affidavit [16-3] at ¶ 24 and ¶ 31.

## RECOMMENDATION

This Complaint fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff's Complaint alternatively could be dismissed under 28 U.S.C. § 1915(e)(2)(B)(iii) as well. Ultimately, this is a clearly frivolous action under 28 U.S.C. § 1915(e)(2)(B)(I).

It is recommended that the **Plaintiff's Motion to Compel [23-1] be deemed moot.** It is further recommended that the **Defendant's Motion for Summary Judgment [16-1] be granted**, that this case be dismissed with prejudice as failing to state a claim upon which relief may be granted, and that this case be deemed a "strike" for purposes of the "three strike rule" of the PLRA, 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997(e).

George C. Kosko
United States Magistrate Judge

May 2, 2006
Charleston, South Carolina

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" AND The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which h eor she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue

on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. \*\*\* This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. \*\*\* We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. \*\*\* A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

> **Larry W. Propes, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**